LEAVY, Circuit Judge,
concurring in part and dissenting in part:
Pursuant to the Supreme Court’s decision in Pearson v. Callahan, 555 U.S. 223, 236-37, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), we need not decide whether a constitutional violation exists before we reach the question of qualified immunity. Because the majority has chosen to reach the issue whether Carona’s conduct violated Hunt’s constitutional rights, I am compelled to concur in only Sections II. D., Ill and IV of the opinion. I dissent from the majority’s holding that Hunt was not a “policymaker.”
In determining whether an employee is a policy maker, the “ultimate inquiry is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.” Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Following Branti, we have explained that the policymaker exception is not limited to “party affiliation,” but includes termination based on “political affiliation, which includes commonality of political purpose and support.” Walker v. City of Lakewood, 272 F.3d 1114, 1132 (9th Cir.2001) (citation and internal quotation omitted).
Because “[t]he nature of the responsibilities is critical” to a determination whether a particular employee holds a policy-making position, Elrod v. Burns, 427 U.S. 347, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), we have set forth nine factors that should be taken into account in the analysis: “vague or broad responsibilities, relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders.” Bardzik v. County of Orange, 635 F.3d 1138, 1145 *618 (9th Cir.2011) (citing Fazio v. City and County of San Francisco, 125 F.3d 1328, 1334 n. 5 (9th Cir.1997)). Contrary to the majority’s opinion, the district court did not consider these factors in a vacuum, but applied them in light of the overarching question, whether effective performance of the Chief of Police Services for the City of San Clemente required a commonality of political purpose with the Orange County Sheriff. As is discussed below, the district court’s affirmative answer to this question is amply supported both by the jury’s answers to the special interrogatories and Hunt’s testimony.
Job Responsibilities. The jury found that Hunt’s job responsibilities were “restricted to implementing the Department’s goals within a general framework provided by the Department,” and “restricted to implementing the City of San Clemente’s goals within a general framework provided by the Department.” However, the jury also found that Hunt was responsible for “formulating] plans to implement the broad goals of the OCSD in the City of San Clemente,” and had “discretionary authority regarding the deployment of deputy sheriffs within” the City. Hunt’s responsibilities were remarkably similar to those described in Bardzik, where the police lieutenant/policymaker was “in effect running the Reserves,” but was restricted by Carona’s instruction to “run the Reserves like every other division.” Bardzik, 635 F.3d at 1146. Thus Hunt’s job responsibilities, like Bardzik’s, were broad enough to support policymaker status.
Relative Pay and Technical Competence. As noted by the majority, the parties agreed the court should not propound special jury interrogatories regarding relative pay and stipulated that Hunt’s position required technical competence.
Power to Control Others. Hunt testified he supervised approximately 56 employees as Chief of Police Services for the City of San Clemente. While the parties stipulated Hunt lacked the power to hire employees under his command or determine criteria for promoting them, the jury concluded that “Hunt resolve[d] official complaints from citizens regarding the conduct of employees under his command” and “in some instances,” had “the authority to determine the type of discipline to be imposed on any subordinate under his command.” The majority distinguishes Bardzik based on the greater number of officers supervised, Bardzik was in charge of only part-time volunteers. Hunt, by contrast supervised the active police force for an entire city. Moreover, Bardzik “did not supervise the reserves while they were working in other divisions, he did not train the reserves, and he referred personnel problems to the Department’s Personnel Division.” Id. at 1141, 1146. Hunt, by contrast, was the sole supervisor of his employees, resolved complaints regarding employee conduct, and was authorized to make disciplinary decisions.
Authority to Speak in the Name of Policymakers. While the jury found that Hunt lacked authority to speak with the media without the prior approval of either higher ranking OCSD officers or the OCSD’s Public Information Officer, it also concluded that Hunt regularly interacted with the San Clemente City Council on behalf of OCSD, made comments to the media, and regularly interacted with the public as a representative of the OCSD concerning law enforcement matters in San Clemente. Thus, Hunt regularly was authorized to communicate on OCSD’s behalf with elected officials and the public. The majority apparently holds that it doesn’t matter that Hunt acted as a spokesperson for the OCSD in San Clemente.
*619 Influence on Programs or Policy. The jury found that Hunt did not formulate or substantially influence policy for the Orange County Sheriffs Department (“OCSD”) that applied department-wide, but that he “substantially influenced” policy for the OCSD that affected the City of San Clemente, formulated plans to implement the broad goals of OCSD in the City of San Clemente, and exercised discretion regarding how to implement the policies of the OCSD in the City. Hunt conceded he was a leader, a decision-maker, and manager in the OCSD, and made daily decisions on how to run the [law enforcement] operation in San Clemente. The majority repeatedly refers to Hunt’s inability to make policy county-wide as a basis for concluding his job responsibilities were not those of a policymaker. The inability to make county-wide policy does not negate Hunt’s extensive authority to make policy in San Clemente. There is no case which stands for the proposition that a “policymaker” within a particular jurisdiction must have authority to make policy for the entire jurisdiction. In fact, Hunt’s influence on policy is strikingly similar to the lieutenanVpolicymaker in Bardzik, who could not “unilaterally create policy,” but “influenced many ... programs within the division he supervised.” Id. at 1146.
The majority concedes the three remaining factors, contact with elected officials, public perceptions, and responsiveness to partisan politics and leaders, weigh in favor of classifying Hunt as a policymaker. The jury’s finding on these factors was that Hunt regularly interacted with the City Council and the public, the public perceived Hunt represented the OCSD in the City of San Clemente and Hunt’s position required him to be responsive to City Council members and other political leaders in Orange County.
In sum, the evidence shows that Hunt was responsible for formulating plans to implement OCSD policy in San Clemente, had the ability substantially to influence OCSD policy in the City, spoke regularly with city elected officials and citizens on behalf of OCSD, and was perceived by the public as representing OCSD in San Clemente. Thus, applying the relevant factors, Hunt was in a position for which political loyalty was an appropriate requirement and the “policymaker” exception applies.
In addition to these factors, in Bardzik we found persuasive in the policymaker determination the fact that the lieutenant actively sought to undermine the Sheriffs policies. Id. at 1148. Here, this consideration is even more significant. Bardzik merely supported Hunt in thé contested election, while Hunt campaigned on a platform accusing Carona of corruption. In Bardzik by a divided court we held that the district court erred in finding that the lieutenant who supported Hunt was not a policymaker. In this case by a divided court we hold that the district erred in finding that the candidate was a policymaker. “An elected official need not retain a high-ranking official in a position to undermine the official’s credibility and goals when neither the electorate nor an appropriate agency has determined that the official has violated the law.” Id. at 1149. Carona did not violate the Constitution when he removed Hunt from his position as Chief of Police.